**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

|  |  |
|---|---|
| **KIMBERLEY CHIDINMA DURU,** **Plaintiff** **v.** **MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; JOSEPH B. EDLOW**, Director U.S. **Citizenship and Immigration Services; and CARRIE M. SELBY, Acting Associate Director, Service Center Operations Directorate, Defendants.** | )<br>)<br>)<br>)<br>)<br>) **Case No. 1:26-cv-1132**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

This action is brought by the Plaintiff, Kimberley Chidinma Duru, against the Defendants to compel adjudication of her pending Form I-765, *Application for Employment Authorization* ("**I-765**"). The Plaintiff's I-765 meets all requirements for approval, but the Defendants, who retain jurisdiction over the I-765 application, refuse to adjudicate said application to the detriment of the Plaintiff. The Defendants base their refusal to adjudicate the Plaintiff's application on two recent policy memoranda issued by the United States Citizenship and Immigration Service:

(1) Policy Memorandum 602-0192, dated December 2, 2025, with the subject "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries" (**Exhibit A,** "**PM 602-0192**") which, among other things, places "a hold on pending benefit requests for aliens from countries listed in Presidential Proclamation (PP) 10949, *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats* ['PP 10949'], pending a comprehensive review, regardless of entry date;" and

(2) Policy Memorandum 602-0194, dated January 1, 2026, with the subject "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries" (**Exhibit B,** "**PM 602-0194**" and, together with PM 602-0192, the "**Policy**

**Memoranda**") which, among other things, places "a hold on all pending benefit applications, for aliens listed in Presidential Proclamation (PP) 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States* ['PP 10998'] pending a comprehensive review, regardless of entry date."

The Defendants' refusal to adjudicate the Plaintiff's application, established by the Policy Memoranda, is contrary to the Administrative Procedure Act, 5 U.S.C. §§ 555 et seq. and §§ 701 et seq. ("**APA**"), and the Plaintiff seeks relief pursuant to Section 706 of the APA. The Plaintiff further requests relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 ("**Declaratory Judgment Act**"), and requests injunctive relief to cease the application of the Policy Memoranda to the adjudication of her I-765 in order to prevent further damage and disruption to her life due to the unlawful actions of the Defendants.

## PARTIES

1.     Plaintiff, **Kimberley Chidinma Duru**, is a native and citizen of Nigeria who resides lawfully in the Commonwealth of Virginia.

2.     Defendant **Markwayne Mullin** is being sued in his official capacity as the Secretary of the Department of Homeland Security ("**DHS**"). In that capacity, Secretary Mullin is charged with the administration and enforcement of the United States' immigration laws pursuant to 8 U.S.C. § 1103. The U.S. Citizenship and Immigration Services ("**USCIS**"), an agency within the DHS to whom to Secretary's authority has in part been delegated, is subject to Secretary Mullin's supervision.

3.     Defendant **Joseph B. Edlow** is being sued in his official capacity as the Director of USCIS, which agency is responsible for the nationwide administration of laws and statutes governing immigration and naturalization, including the adjudication of petitions for immigration benefits. 6 U.S.C. § 271.

4.     Defendant **Carrie M. Selby** is being sued in her official capacity as the Acting Associate

2

Director for the Service Center Operations Directorate ("**SCOPS**") within the USCIS. SCOPS is responsible for adjudicating immigration petitions and applications that do not require interviews, such as the Plaintiff's Form I-765.

### JURISDICTION

5.     This Court has subject matter jurisdiction over this action under 8 U.S.C. § 1329 (jurisdiction of district courts) and 28 U.S.C. § 1331 (federal question jurisdiction) because the Plaintiff's claims arise under the laws of the United States, specifically the Immigration and Naturalization Act, 8 U.S.C. § 1101, et seq. ("**INA**") and its implementing regulations. This Court has authority to grant the relief sought by the Plaintiff pursuant to 5 U.S.C. §§ 555(b), 702, 704 and 706 (APA), and 28 U.S.C. § 2201 et seq. (Declaratory Judgment Act).

6.     Under the APA, "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

7.     The Policy Memoranda constitute a final agency action under the APA. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (finding an agency action is final only if it is: 1. the consummation of an agency's decision-making process, and 2. an action by which rights or obligations have been determined or from which legal consequences will flow).

8.     The Policy Memoranda are final agency actions because they, *inter alia*, create and impose new rules and procedures and clearly place an indefinite hold on final adjudication of all pending benefit applications for aliens from a list of countries, including Nigeria. The Policy Memoranda further affect the rights of foreign nationals subject to the adjudication hold, such as the Plaintiff, and legal consequences will flow from that adjudication hold. As discussed in more detail below, without final adjudication of her Form I-765, the Plaintiff will not be able to work in the United States, will lose the

position she has earned in a surgical residency program, will be prevented from continuing her medical training in the United States, and will be required to leave the United States within 60 days after the conclusion of her current medical school program.

9.      USCIS has a clear, nondiscretionary duty to adjudicate the Plaintiff's Form I-765 because the Plaintiff is seeking authorization for temporary employment for optional practical training ("**OPT**") directly related to her major area of study following completion of her degree program. The procedures for applying for OPT, discussed in greater detail below, are set forth in 8 C.F.R. § 214.2.f.11 and clearly state that "USCIS *will adjudicate* a student's Form I-765 or successor form on the basis of the [designated school official]'s recommendation and other eligibility." 8 C.F.R. § 214.2.f.11.iii (emphasis added). Courts have consistently held that USCIS has a nondiscretionary duty to process applications within a reasonable timeframe, even when the ultimate decision to grant or deny the application is discretionary. *See*, *e.g.*, *Fei Wang v. Chertoff*, 676 F. Supp. 2d 1086 (D. Idaho 2009); *Hong Wang v. Chertoff*, 550 F. Supp. 2d 1253 (W.D. Wash. 2008); *Shahid Khan v. Scharfen*, 2009 U.S. Dist. LEXIS 28948 (N.D. Cal. Apr. 6, 2009); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540 (S.D.N.Y. 2008); *Jones v. Gonzales*, Slip Copy, 2007 U.S. Dist. LEXIS 45012 (S.D. Fla. June 21, 2007) ("[N]o agency responsible for resolving matters of public interest should be free to let those matters pend in perpetuity; otherwise would be to relieve the agency of its Congressionally-mandated duty to the public.").

10.     The APA requires USCIS to carry out its duties within a reasonable time. 5 U.S.C. § 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." USCIS is subject to 5 U.S.C. § 555(b). See *Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir.

1997) (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n. 4 (1986). *See also Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006) (finding that district court has jurisdiction under the APA, in conjunction with 28 U.S.C. § 1331, to review plaintiff's complaint for declaratory and injunctive relief against federal agency); *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 114 (D.D.C. 2005) ("The Administrative Procedure Act requires an agency to act, within a reasonable time," 5 U.S.C. § 555(b), and authorizes a reviewing court to, compel agency action … unreasonably delayed," U.S.C. § 706(1).").

11.    Courts have consistently held that USCIS has a nondiscretionary duty to process applications within a reasonable timeframe, even when the ultimate decision to grant or deny the application is discretionary. *See*, *e.g.*, *Fei Wang v. Chertoff*, 676 F. Supp. 2d 1086 (D. Idaho 2009); *Hong Wang v. Chertoff*, 550 F. Supp. 2d 1253 (W.D. Wash. 2008); *Shahid Khan v. Scharfen*, 2009 U.S. Dist. LEXIS 28948 (N.D. Cal. Apr. 6, 2009); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540 (S.D.N.Y. 2008); *Jones v. Gonzales*, Slip Copy, 2007 U.S. Dist. LEXIS 45012 (S.D. Fla. June 21, 2007) ("[N]o agency responsible for resolving matters of public interest should be free to let those matters pend in perpetuity; otherwise would be to relieve the agency of its Congressionally-mandated duty to the public.").

12.    There is no jurisdictional bar to review under Section 242 of the INA, 8 U.S.C. § 1252. INA § 242(a)(2)(B) provides that no court shall have jurisdiction to review either (i) "any judgment regarding the granting of various forms of relief from removal, or (ii) "any other decision or action … the authority for which is specified … to be in the discretion of the Attorney General or the Secretary of Homeland Security." The decision not to adjudicate a properly filed I-765 for OPT is neither a judgment regarding the granting of relief from removal nor a decision or action that is specified to be in

the discretion of the Attorney General or the Secretary of Homeland Security, and therefore the Court retains original jurisdiction over this claim. *See Varniab v. Edlow*, No. 25-CV-10602-SVK, 2026 WL 485490, at *7 (N.D. Cal. Feb. 20, 2026) (collecting cases); *Bowser v. Noem, No. 26*-CV-10382-AK, 2026 WL 555624, at *4 (D. Mass. Feb. 27, 2026) (holding that "Section 1252(a)(2)(B)(ii) does not strip this Court of jurisdiction" to review claims seeking review of the adjudication hold imposed by the same Policy Memoranda at issue in this case); *see also Ahmadi v. Chertoff*, 522 F. Supp. 2d 816,819 (N.D. Tex. 2007) ("[S]ection 1252(a)(2)(B)(ii) only preludes judicial review of decisions or actions that are specified to be within the discretion of the Attorney General … [T]he duty to act on an application, as distinguished from how to act, is not specified to be within the discretion of the Attorney General. Accordingly, section 1252(a)(2)(B) fails to rebut the presumption of jurisdiction"); *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1136-1139 (D. Ariz. 2008) ("Numerous district courts … which have addressed this specific issue overwhelmingly conclude that … [8 U.S.C. § 1252(a)(2)(B)(ii)] does not bar judicial review"); *Liu v. Novak*, 509 F. Supp. 2d 1, 4-7 (D.D.C. 2007) ("[T]here is … significant district court authority holding that [8 U.S.C.] § 1252(a)(2)(B)(ii) does not bar judicial review of the pace of application processing or the failure to take action").

13.    Although the Fourth Circuit Court of Appeals has found in some cases that decisions not to adjudicate certain applications for immigration relief are not reviewable pursuant to 8 U.S.C. § 1252(a)(2)(B) and similar jurisdictional statutes, the cases in which it has done so are distinguishable from the instant case. The decision to grant or deny the immigration applications in those cases was left to the discretion of USCIS (or another adjudicative authority), and the court in these cases found that this discretion extended to the decision of whether or not to even adjudicate the applications. *See Lovo v. Miller*, 107 F.4th 199, 211 (4th Cir. 2024) ("[T]he statement in [8 C.F.R.] § 212.7(e)(2)i) that USCIS

'*may* adjudicate' Provisional Waiver Applications offers a clear indication that USCIS is not *mandated* to do so.") (emphasis in original); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) (finding USCIS had no duty to adjudicate work authorization applications for aliens with pending U-Visa applications where the relevant "statute shows the agency action is discretionary: 'Secretary *may* grant work authorization.' 8 U.S.C. § 1184(p)(6)") (emphasis in original). The Fourth Circuit further noted in these cases, however, that USCIS does have a duty to adjudicate applications where the language in the operative statute or regulation is mandatory, not permissive: "As illustrated by our conclusion in *Gonzalez*, the presence of 'unmistakably mandatory' language, such as the word 'will,' can provide sufficient evidence of the unequivocal command required for us to hold that an agency is compelled to act." *Lovo*, 107 F.4th at 211(internal citations omitted).

## VENUE

14.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(e)(2) because this is a civil action against officers and agencies of the United States acting in their official capacities and a substantial portion of the events or omissions giving rise to the Plaintiff's claims occurred in this district. Alternately, venue is proper pursuant to 28 U.S.C. § 1391(e)(3) as the defendants are all agencies of the United States government and subject to the court's personal jurisdiction.

## LEGAL BACKGROUND

*Immigration law and regulations regarding Employment Authorization and OPT*

15.     Federal immigration law requires certain foreign nationals to receive permission to work in the United States, and for employers to ensure that all foreign nationals have lawful permission. *See* 8 U.S.C. § 1324a. While some immigration statuses automatically receive permission and work authorization, other statuses require that foreign nationals "must affirmatively apply for employment

authorization with USCIS" by filing a Form I-765. 8 C.F.R. § 274a.12(c); U.S. Citizenship & Immigration Servs., *USCIS Policy Manual*, Vol. 10: Employment Authorization, Part A, Chapter 1 (Purpose and Background), 10 USCIS-PM A.1(A). Regulations outline which immigrant categories require authorization to work and which are automatically eligible. *See* 8 C.F.R. § 274a.12. Nonimmigrant F-1 students, like the Plaintiff, who seek to complete OPT are one of the categories of foreign nationals who must affirmatively apply for employment authorization. 8 C.F.R. § 274a.12(c).

16.    The immigration regulations set forth detailed procedures for nonimmigrant students who wish to study and train in the United States on an F-1 student visa. 8 C.F.R. § 214.2(f). In order to be admitted into the United States on an F-1 student visa, a student must present "a Form I-20 or successor form issued in the student's name by a school certified by the Student and Exchange Visitor Program (SEVP) for attendance by F-1 foreign students." 8 C.F.R. § 214.2(f)(1)(i)(A). The Form I-20, *Certificate of Eligibility for Nonimmigrant (F-1) Student Status for Academic and Language Students*, is issued by the Designated School Official ("**DSO**") of an SEVP-certified institution and reflects the most up-to-date information for the student in the Student and Exchange Visitor Information System ("**SEVIS**"). *See* 8 C.F.R. §§ 214.2, 214.3.

17.    An F-1 student who wishes to pursue OPT must first request a recommendation for OPT from the DSO at their educational institution. 8 C.F.R. § 214.2(f)(11)(i). After making the recommendation, the DSO "will provide the student a signed Form I-20 indicating that recommendation." *Id.*

18.    After receiving the updated Form I-20 with the DSO's recommendation, the F-1 student must file a Form I-765, *Application for Employment Authorization*, with USCIS. 8 C.F.R. § 214.2(f)(11)(i)(A). For OPT following the completion of an educational program ("**Post-Completion OPT**"), the student must file his or her Form I-765 no earlier than 90 days prior to their program end date and no

later than 60 days after that end date. 8 C.F.R. § 214.2(f)(11)(i)(B)(2). In addition, the student must start their Post-Completion OPT employment within 60 days after the student's program end date. 8 C.F.R. § 214.2(f)(11)(i)(D).

19.     The OPT regulations require that USCIS adjudicate the Form I-765 once submitted. 8 C.F.R. § 214.2(f)(11)(iiii) ("**Decision on application for OPT employment authorization.**  USCIS *will adjudicate* a student's Form I-765 or successor form on the basis of the DSO's recommendation and other eligibility considerations.") (emphasis added). Once USCIS adjudicates the application, "USCIS *will notify the applicant of the decision* on the Form I-765 or successor for in writing, and, if the application is denied, of the reason or reasons for the denial." 8 C.F.R. § 214.2(f)(11)(iii)(B) (emphasis added); *see also* 8 C.F.R. § 103.3. USCIS is thus bound by regulation to adjudicate I-765 applications for OPT, even though the decision to approve such applications remains within the discretion of USCIS. *See* 8 U.S.C. § 274a.13(a)(1).

20.     Under normal circumstances, applicants may also file Form I-907, *Request for Premium Processing Services* ("**Premium Processing**") to obtain expedited adjudication of their Form I-765 for an additional fee of $1,780. 8 C.F.R. § 106.4; USCIS, *Calculate Your Fees* – I-907, available at, https://www.uscis.gov/feecalculator?form=i-907; date of last visit: April 27, 2026. USCIS promises to refund the fee if the adjudication is not completed within the stated period in the Federal Regulations. 8 C.F.R. § 106.4(f)(4); 8 C.F.R. § 106.4(e)(21) ("Application for employment authorization: 30 business days"). USCIS still advertises premium processing to applicants whose applications are subject to the adjudication hold established in the Policy Memoranda, even though USCIS has not provided any guidance on the interaction between Premium Processing and the new policies set forth in the Policy Memoranda. (**Exhibit C: "How Do I Request Premium Processing?**, available at

https://www.uscis.gov/forms/all-forms/how-do-i-request-premium-processing, last visited April 27, 2026).

21.    Upon approval of an I-765, USCIS produces an Employment Authorization Document ("**EAD**"), printed as an ID card, which is designated as Form I-766, to the eligible foreign national as proof of employment authorization.

*The Travel Ban Proclamations and the USCIS Policy Memoranda*

22.    On June 24, 2025, President Donald J. Trump issued Proclamation 10949 (the "**First Travel Ban Proclamation**") which completely suspended entry into the United States by foreign nationals from twelve countries, and partially suspended entry into the United States by foreign nationals from an additional seven countries. In issuing the First Travel Ban Proclamation, President Trump cited his authority under sections 212(f) and 215(a) of the INA, 8 U.S.C. §§ 1182(f), 1185(a). Section 212(f) of the INA identifies the grounds upon which foreign nationals may be deemed inadmissible to the United States, and Section 215(a) of the INA concerns the travel control of citizens and foreign nationals into and out of the United States.

23.    On December 2, 2025, USCIS issued PM 602-0192, which placed a hold on pending benefit requests by any foreign nationals from the countries listed in the First Travel Ban Proclamation. PM 602-0192 stated that USCIS would issue "operational guidance" within ninety days of issuance of that memorandum. The ninety day deadline for USCIS to issue operational guidance under PM 602-1092 passed on March 2, 2026. As of this date, past the ninety-day deadline, USCIS still has not provided the promised operational guidance.

24.    On December 16, 2025, President Trump issued Proclamation 10998 (the "**Second Travel Ban Proclamation**" and, together with the First Travel Ban Proclamation, the "**Travel Ban**

**Proclamations**"), which extended the travel restrictions of the First Travel Ban Proclamation to foreign nationals from an additional twenty countries, including Nigeria. As in the First Travel Ban Proclamation, President Trump cited his authority under sections 212(f) and 215(a) of the INA in issuing the Second Travel Ban Proclamation.

25.     On January 1, 2026, USCIS issued PM 602-0194, which extended the adjudication hold on pending benefit requests to foreign nationals from the twenty additional countries listed in the Second Travel Ban Proclamation, including Nigeria.

26.     As it did with PM 602-0192, USCIS committed to issuing operational guidance within ninety days of the issuance of PM 602-0194. The ninety day deadline for USCIS to issue operational guidance under PM 602-1094 passed on April 1, 2026. As of this date, past the ninety-day deadline set in PM 602-0194, USCIS still has not provided the promised operational guidance.

27.     Unlike PM 602-1092, PM 602-1094 did identify certain limited exceptions to the adjudication hold, including "[b]enefit requests filed by aliens who entry would serve a United States national interest." Exhibit B at 5. PM 602-1094 offered examples of aliens whose benefits requests might fall within this national interest exception, but it did not provide a procedure by which foreign nationals subject to the Policy Memoranda can apply for that national interest exception or any of the other limited exceptions.. PM 602-1094 states that "[a]ny request for an exemption to the adjudicative hold must be coordinated with the USCIS Office of Policy and Strategy (OP&S) … [which will] issue additional guidance within 7 days of issuing this memorandum." *Id.* at 4, n. 10. The USCIS Office of Policy and Strategy has not publicly provided any such guidance.

28.     The Policy Memoranda do not contain a reasoned explanation for enacting the adjudication hold nor a demonstration of how the Defendants balanced that decision against the reliance interests of

11

foreign nationals, like the Plaintiff, on the preexisting policy or against any other consequences of the adjudication hold, such as the risk to foreign nationals' ability to work or their possible loss of legal immigration status. The Policy Memoranda also fail to state whether the Defendants considered reasonable alternatives before implementing the adjudication hold.

29.    In issuing the Policy Memoranda, USCIS also failed to identify any authority to support its decision to place a hold on all pending benefit requests from foreign nationals from countries listed in the Travel Ban Proclamations, including foreign nationals who have already been lawfully admitted into the United States. The Travel Ban Proclamations cite INA §§ 212(f) and 215(a) for their statutory authority but, as USCIS processes applications for individuals who have already been admitted into the United States, those statutes do not provide USCIS with any justification or authority for its decision to place an adjudication hold on all pending benefit requests from foreign nationals from countries listed in the Travel Ban Proclamations.

30.    USCIS did not follow the notice-and-comment rule-making procedures required to promulgate substantive rules under the APA, 5 U.S.C. § 553, before adopting either of the Policy Memoranda.

31.    On March 30, 2026, USCIS posted an alert on its website entitled "Update on USCIS' Strengthened Screening and Vetting, (**Exhibit D, the "USCIS 3/30 Alert**," available at https://www.uscis.gov/newsroom/alerts/update-on-uscis-strengthened-screening-and-vetting,    l a s t visited April 27, 2026. The USCIS 3/30 alert states that "USCIS has implemented a series of robust actions after issuance of [the Policy Memoranda]," including establishing "an internal process for lifting holds on individual or group cases." The USCIS 3/30 Alert further states that USCIS has lifted holds on, among other things, "certain employment authorization documents." The USCIS 3/30 Alert does not provide any detail regarding the internal process for lifting holds, nor does it explain why

USCIS has lifted the hold on certain employment authorization documents but has not lifted the hold for others. It is unclear whether the USCIS 3/30 Alert is intended to serve as the operational guidance promised in each of the Policy Memoranda.

## STATEMENT OF FACTS

32.    The Plaintiff, Kimberley Chidinma Duru, first entered the United States in 2011 on a valid F-1 student visa. She attended the Rochester Institute of Technology in Rochester, New York, graduating magna cum laude in May 2015 with a Bachelor of Science in Biomedical Sciences. (**Exhibit E: Copies of Plaintiff's Diplomas**).

33.    After completion of her undergraduate education, the Plaintiff applied for and received authorization for temporary employment for optional practical training relating to her undergraduate degree. The Plaintiff subsequently applied for and received authorization for temporary employment for optional practical training in STEM.

34.    In the fall of 2017, the Plaintiff enrolled in a masters' program at Brown University in Providence, Rhode Island, graduating with a Master of Public Health. Exhibit E. The Plaintiff again applied for and received authorization for temporary employment for optional practical training relating to her Master of Public Health.

35.    The Plaintiff's employment authorization following her masters' program ended on July 26, 2020. The Plaintiff was not able to immediately obtain a flight home to Nigeria due to travel restrictions related to the COVID-19 pandemic, and so she applied to change her status to that of a B-2 visitor. That application was still pending when the Plaintiff was able to secure a flight home to Nigeria.

36.    The Plaintiff returned home to Nigeria in early 2021 to visit family and with the intention of

returning to the United States to continue her education. Due to delays in processing her visa, the Plaintiff was not able to return to the United States until 2022.

37.    The Plaintiff was accepted into the University of Virginia School of Medicine and reentered the United States in 2022 with a valid F-1 visa. The Plaintiff is currently in her final year of medical school and will graduate on May 17, 2026. (**Exhibit F: Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, dated February 17, 2026**).

38.    In order to continue her medical training in the United States following her graduation from medical school, the Plaintiff requested and received a recommendation for OPT from the DSO at the University of Virginia. Exhibit F. The Plaintiff subsequently submitted an I-765, *Application for Employment Authorization*, which was received by USCIS on February 27, 2026. (**Exhibit G: Receipt of Form I-765, dated February 27, 2026**). The Plaintiff submitted her Form I-765 as early as was practicable given that 8 C.F.R. § 214.2(f)(11)(i)(B)(2) precludes F-1 visa holders from requesting OPT earlier than ninety (90) days before the end of their program end date. The Plaintiff also appeared at her biometrics appointment on March 13, 2026, as required by USCIS. (**Exhibit H: Biometrics Appointment Notice with attendance stamp dated March 13, 2026**).

39.    Following medical school, the Plaintiff intends to become a surgeon with a focus on either pediatrics, organ transplants, or oncology. The Plaintiff applied to a number of surgical residency programs and, on March 20, 2026, the Plaintiff received notification from the National Residency Match Program that she had been accepted into the surgical residency program at the Oregon Health Science University School of Medicine ("**OHSU SOM**"). (**Exhibit I: Email informing the Plaintiff of match with surgical residency program at OHSU SOM**).

40.    The OHSU SOM has informed Plaintiff that she is required to report to the residency program

by June 11, 2026 to begin her initial training and orientation prior to the official commencement of her residency on July 1, 2026. (**Exhibit J: email from OHSU surgical residency program director**). If the Plaintiff's Form I-765 is not adjudicated prior to June 11, 2026, the Plaintiff fears she will lose her position within the surgical residency program at the OHSU SOM and will be forced to delay her medical training. Plaintiff's current F-1 visa expires following the end of her current medical school program at the University of Virginia on May 17, 2026, and, without that work authorization, Plaintiff will be forced to return home to Nigeria within sixty (60) days after that date. Exhibit F.

41.     The Plaintiff has no hope that her I-765 application will be adjudicated at any time in the near future without court intervention. The Policy Memoranda do not include any end date to the Adjudication Hold, and USCIS has to date failed to timely produce the operational guidance promised in the Policy Memoranda.

42.     The Plaintiff's I-765 has been pending since February 27, 2026. Although the USCIS website currently states that 80% of applications such as Plaintiff's are adjudicated within four and half months after receipt, the Plaintiff has no reason to believe that her application will be adjudicated within that timeframe due to the adjudication hold.[1]

43.     The Defendants have no valid justification for placing an indefinite hold on the adjudication of the Plaintiff's I-765 application, which would allow her to join the surgical residency program at OHSU SOM and continue her medical training. The adjudication hold set forth in the Policy Memoranda has caused the Plaintiff extensive emotional distress and has made it very difficult, if not impossible, for her to make the necessary arrangements so that she can begin her surgical residency on time.

44.     The Plaintiff will suffer irreparable harm if she is not able to obtain an EAD in time to begin her position in the surgical residency program at OHSU. Although the Plaintiff could theoretically go

---

1   Plaintiff is also willing to pay for Premium Processing for her I-765.

through the residency match process again in future years, there is no guarantee that she would be able to secure a position within the surgical residency program at OHSU or anywhere else. Even if the Plaintiff were able to obtain a position with another surgical residency program in the United States, she would not be able to reenter the United States to begin such a residency for so long as the Travel Ban Proclamations remain in effect.

45.    The Plaintiff has expended countless hours of work to obtain her undergraduate degree, her Master of Public Health, and her medical degree in pursuit of her goal to become a surgeon. In addition, the Plaintiff has made significant financial investments in her medical education and, because she is not eligible for financial aid, the Plaintiff has had to incur substantial loan obligations in order to pay for that education. If the Plaintiff does not receive an EAD and is forced to return to Nigeria, she fears that her dream of becoming a surgeon will be foreclosed, that all of her time and effort in pursuit of her medical education will have been for nought, and that she will be unable to fulfill her loan obligations.

46.    The Plaintiff is filing this complaint because she has no other adequate remedy available to her to obtain adjudication of her Form I-765.

## CAUSES OF ACTION

### COUNT ONE
### APA – Unreasonable Delay and Unlawful Withholding
### (Against All Defendants)

47.    The Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

48.    Section 555 of the APA commands administrative agencies to conclude matters presented to the agency for decision "within a reasonable time." 5 U.S.C. § 555(b) ("With due regard for the

convenience and necessity of the parties … and *within a reasonable time*, each agency *shall* proceed to conclude a matter presented to it.") (emphasis added).

49.   "Agency action" covered by the APA includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act."* 5 U.S.C. § 551(13) (emphasis added).

50.   The APA explicitly provides a right of judicial review to a person "adversely affected or aggrieved" by an agency's "fail[ure] to act" or other such agency action. 5 U.S.C. § 702.

51.   When, as here, a proper showing is made, "[t]he reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Defendants, acting through USCIS, have a clear, mandatory duty to adjudicate applications such as those filed by the Plaintiff and to issue approvals when the requirements have been satisfied. *See* 8 C.F.R. § 214.2(f)(11)(iiii) ("**Decision on application for OPT employment authorization.** USCIS *will adjudicate* a student's Form I-765 or successor form on the basis of the DSO's recommendation and other eligibility considerations.") (emphasis added). *See also Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (S.D.N.Y. 2008) (finding that the Attorney General has discretion to grant or deny an application, but does not have discretion to simply never adjudicate an adjustment application). The Plaintiff has complied with all the requirements for approval of her I-765: she has submitted all necessary information and evidence to support the application; attended a biometrics appointment; and paid all applicable fees.

52.   The Policy Memoranda constitute a final agency action reviewable under the APA. The Policy Memoranda create new rules and procedures by instituting an indefinite ban on the adjudication of all applications for relief from foreign nationals from the 39 countries listed in the Travel Ban

Proclamations, including Nigeria. The Policy Memoranda affect the Plaintiff's rights because, without approval of her Form I-765, she will lose her position in the surgical residency program at OHSU, will be unable to complete her medical training in the United States, and will be required to leave the United States once her current F-1 student visa expires.

53.    The Defendants, in adopting the adjudication hold via the Policy Memoranda, are unlawfully withholding and unreasonably delaying their duty to adjudicate the Plaintiff's application within a reasonable time.

54.    The Plaintiff has a clear right to have her application adjudicated and has no other adequate legal remedy available to her other than this lawsuit.

**COUNT TWO**
**APA – Arbitrary, Capricious, and Unlawful Final Agency Action)**
**(Against All Defendants)**

55.    The Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

56.    Under the APA, courts must "hold unlawful and set aside agency action" that is: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A) and (C). An action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (*quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

57.    The Policy Memoranda constitute a final agency action under the APA. The Policy Memoranda

18

create new rules and procedures by instituting an indefinite ban on the adjudication of all applications for relief from foreign nationals from the 39 countries listed in the Travel Ban Proclamations, including Nigeria. The Policy Memoranda affect the Plaintiff's rights because, without approval of her Form I-765, she will lose her position in the surgical residency program at OHSU, will be unable to complete her medical training in the United States, and will be required to leave the United States once her current F-1 student visa expires.

58.    The Policy Memoranda, in establishing the adjudication hold, are arbitrary, capricious, and contrary to law. The Policy Memoranda do not provide a reasoned explanation for enacting the adjudication hold against foreign nationals like the Plaintiff, nor have they demonstrated how they balanced the imposition of the adjudication hold against the reliance interests of foreign nationals, like the Plaintiff, on the preexisting policy or against any other consequences of the adjudication hold. The Defendants have provided no evidence that they considered reasonable alternatives to the expansive adjudication hold in the Policy Memoranda.

59.    In addition, the Defendants have no legal authority to impose the adjudication hold in the Policy Memoranda. The Policy Memoranda explicitly state that they were adopted due to the Travel Ban Proclamations, which focused on restricting the entry of foreign nationals from certain countries and cited the President's authority under INA § 212(f), but they do not explain how that statutory authority, or any statutory authority, allows USCIS to apply the adjudication hold against applicants such as the Plaintiff who have already been lawfully admitted into and have been living in the United States for an extended period of time.

60.    Plaintiff was harmed, and continues to be harmed, by the Defendants' unlawful actions.

**COUNT THREE**
**APA – Agency Action without Required Procedures**
**(Against All Defendants)**

61.    The Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

62.    The APA requires administrative agencies to follow notice-and-comment rule-making procedures to promulgate substantive rules. 5 U.S.C. § 553.

63.    The APA defines "rule" broadly to include "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency" 5 U.S.C. § 551(4).

64.    The APA further provides that a "reviewing court shall … hold unlawful and set aside agency action, findings and conclusions found to be … without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

65.    The adjudication hold created by the Policy Memoranda constitutes a substantive rule because it is a new policy by which USCIS categorically refuses to adjudicate and issue decisions for almost all properly submitted immigration applications submitted by foreign nationals from 39 countries, including Nigeria.

66.    In issuing the Policy Memoranda and implementing the adjudication hold, the Defendants impermissibly announced a new rule without undertaking the required notice-and-comment rule-making.

67.    Plaintiff was harmed, and continues to be harmed, by the Defendants' unlawful actions.

20

## COUNT FOUR
### *Ultra Vires*
### (Against All Defendants)

68.    The Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

69.    The Policy Memoranda, by citing the Travel Ban Proclamations as the bases for their existence, rely directly and indirectly upon authority from INA 212(f) and 215(a). Those sections of the INA, however, do not provide the Defendants with the authority to establish the adjudication hold via the Policy Memoranda. In fact, Defendants have no authority at all to completely withhold adjudication of benefits applications, including the adjudication of Plaintiff's I-765. The Court has inherent equitable power to enjoin actions by federal officers in excess of their lawful authority. *See*, e.g., *Sierra Club v. Trump*, 929 F.3d 670, 694 (9th Cir. 2019) ("The Supreme Court has 'long held that federal courts may in some circumstances grant injunctive relief against' federal officials violating federal law.") (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015)); *E.V. v. Robinson*, 906 F.3d 1082, 1090–91 (9th Cir. 2018) (acknowledging freestanding cause of action for "suits alleging that a federal official acted *ultra vires* of statutorily delegated authority" or "violated the Constitution"); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 189–190 (D.C. Cir. 2006) ("[J]udicial review is available when an agency acts *ultra vires*, even if a statutory cause of action is lacking.") (quotation marks omitted).

70.    The Plaintiff was harmed, and continues to be harmed, by the Defendants' unlawful actions.

### **PRAYER FOR RELIEF**

WHEREFORE the Plaintiff respectfully prays that this Honorable Court enter an order:

a)    Declaring that Defendants' refusal to adjudicate the Plaintiff's I-765 constitutes agency action

unlawfully withheld and unreasonably delayed in direct violation of the APA and, pursuant to 5 U.S.C. § 706(1), compelling Defendants to adjudicate the Plaintiff's I-765, and to print and deliver an EAD to the Plaintiff if her application is granted, within fifteen (15) days from the date of the order;

b)      Declaring that the Policy Memoranda are unlawful and setting them aside because they are arbitrary and capricious, exceed Defendants' statutory authority, or are otherwise contrary to law or procedure, pursuant to 5 U.S.C. § 706(2)(A) and (C);

c)      Declaring that the Policy Memoranda are unlawful and setting them aside because they were implemented without observance of procedures required by law, pursuant to 5 U.S.C. § 706(2)(D);

d)      Enjoining Defendants from applying the Policy Memoranda to Plaintiff's I-765 and directing Defendants (1) to apply the adjudicatory process, standards of review, and burdens of proof in effect prior to the enactment of the Policy Memoranda to Plaintiff's I-765 and (2) to complete all steps necessary to adjudicate the Plaintiff's I-765, and to print and deliver an EAD to the Plaintiff if her application is granted, within fifteen (15) days from the date of the order;

e)      Retaining jurisdiction over this action and any attendant proceedings until Defendant has adjudicated Plaintiff's I-765 application, printed and delivered an EAD to the Plaintiff if her application is granted, and communicated that fact to the Court;

f)      Awarding reasonable costs and attorney fees pursuant to the Equal Access to Justice Act, 42 U.S.C. § 1988, 5 U.S.C. § 504, 28 U.S.C. § 2412 and any other applicable law; and

g)      Granting such further injunctive and equitable relief as this Court deems just and proper.

22

Respectfully submitted,

Kimberley Chidinma Duru

By her attorney,                                                Dated April 28, 2026

/s/ *Edward Summers*
Edward Summers, Esq.
Va. Bar Number 66002
Law Office of Edward Summers, PLLC
204 E. High Street
Charlottesville, VA 22902
Mailing Address: P.O. Box 976
Charlottesville, VA 22902-0976
Tel: 434-220-2799
Fax: 434-465-6655
Email: info@summersimmigration.com

*Counsel for Plaintiff*